IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-0176-WYD-MJW

CROSSFIT, INC., a Delaware corporation,

    Plaintiff,

v.

5280 REALTY, INC., a Colorado corporation;
JOE P. SAINZ III,

    Defendants.

_____

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**
_____

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on Defendants' Motion for Judgment on the Pleadings as to Single Count of Cybersquatting (ECF No. 72), filed on November 12, 2015.[1] The motion is fully briefed. Defendant also filed a Motion to Dismiss (ECF No. 21) on March 26, 2015, which is also fully briefed.

Plaintiff's single claim for relief against Defendants is for cybersquatting under 15 U.S.C. § 1125(d) of the Lanham Act. By way of background, Plaintiff is principally engaged in the business of fitness training and consulting, and owns protectable interests in several registered trademarks comprising the term "CrossFit." This case arises out of Defendants' alleged bad faith intent to profit in registering domain names incorporating Plaintiff's trademarks, namely 5280crossfit.com and 5280crossfitgym.com. Defendants

---

[1] Defendants indicated this motion was unopposed, but it was in fact opposed, and Plaintiff responded on December 3, 2015.

are principally engaged in the business of real estate. Defendant Sainz registered the 5280crossfit.com domain name in October of 2014, and the 5280crossfitgym.com domain name in January of 2015. Plaintiff alleges that it attempted to contact Sainz around January 13, 2015 via email, and offered to purchase the 5280crossfit.com domain name. Compl., ¶ 15. Plaintiff alleges that after several offers and counteroffers, Sainz said he would consider an offer of $450 for the domain name. Id. at ¶ 16. Plaintiff alleges that Sainz then rejected the $450 offer and stated that the name was "a really good one," and that he could "get the asking price he wants." Id. at 17. Plaintiff alleges that Sainz then registered the 5280crossfitgym.com domain name on or around January 14, 2015. Id. at 18. Plaintiff alleges Sainz registered the name in bad faith "to ransom not only one, but two, illegal domain names." Id. at 18. Plaintiff states that it notified Sainz on January 15, 2015, that his use of the domain names was illegal, attached supporting evidence that the CrossFit name is allowed only by affiliation agreement, and suggested a no-cost transfer of the name to Plaintiff. Id. at 19. Plaintiff states that Sainz responded to the email stating that the "little email is going to cost you," and offered both domain names for $1,000. Id. at 20. Plaintiff alleges that "Defendants have never used, [are] not using nor [do they] have a good faith intent to use the Domain Names for their own goods or services independent of the sale of domain names." Id. at 23.

Defendants argue that the disputed domain names were acquired by Defendants in support of their licensed Colorado real estate broker corporation, 5280, for "a legitimate business and not for the purpose of cybersquatting." Def.'s Reply, ECF No. 81, p. 4.

Defendants also argue that they are practicing fair use of the domain names, "with no premeditated intentions to compete," and that Plaintiff's bad faith claims fail because "Defendant never contacted Plaintiff and Defendant never offered the domain name[s] for sale to Plaintiff."  Def.'s Motion, ECF No. 72, p. 2.

Defendants allege that the individual who contacted Sainz on January 13, 2015, Jason Grubb ("Grubb"), "was not associated with the Plaintiff" at that time.  *Id.* at 3. Defendants allege that Grubb "approached CrossFit, Inc. [] and solicited CrossFit to become an affiliate" on January 15, 2015.  *Id.*  Sainz alleges that he had no "communication of any sort with any representative of CrossFit, Inc." prior to the filing of Plaintiff's Complaint on January 26, 2015.  *Id.* at 4.  Plaintiff alleges that Grubb's application for affiliation was approved by Plaintiff on January 9, 2015, and his affiliate license agreement was signed on January 13, 2015.  Compl., ¶ 12.  As part of his license agreement, Grubb was authorized to use an affiliate name of "5280 CrossFit" and to use 5280crossfit.com as his domain name.  *Id.*

II.   ANALYSIS

**A.  Standard of Review**

In reviewing a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the court uses the same standard as that of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Accordingly, the court must "accept all well-pleaded facts as true and view them in the light most favorable" to the party asserting the claim. *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs.*, 633 F.3d 1022, 1025 (10th Cir. 2011).  To survive a motion to

dismiss under Rule 12(b)(6), the party asserting the claim "must allege that 'enough factual matter, taken as true, [makes] his claim for relief . . . plausible on its face.'"  *Id.* "A claim has facial plausibility when the [pleaded] factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

Thus, a party asserting a claim "must include enough facts to 'nudge [] his claims across the line from conceivable to plausible.'"  *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011).   Conclusory allegations are not sufficient.   *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).   Judgment on the pleadings is appropriate only where the movant establishes that no material issue of fact remains to be resolved in light of the pleadings, and that the movant is entitled to judgment as a matter of law.   *Adams v. Jones*, 577 Fed. Appx. 778, 781 (10th Cir. 2014).

**B.   Cybersquatting – 15 U.S.C. § 1125(d)**

The Anti-Cybersquatting Consumer Protection Act ("ACPA") is codified at section 43(a) of the Lanham Act, under 15 U.S.C. § 1125(d).   That section reads as follows:

> (d)(A)   A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
> 
>   i.   has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>   ii.  registers, traffics in, or uses a domain name that
>     I.   in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

> II. in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> III. is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

The Tenth Circuit has held that in order to prevail on a ACPA claim, a plaintiff must show 1) that its trademark was distinctive at the time of the defendant's registration of the domain name; 2) that the domain name registered by the defendant was identical or confusingly similar to the trademark; and 3) that the defendant used or registered the domain name with a bad faith intent to profit. *See Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008).

1. <u>Distinctive Trademark</u>:

To determine whether CrossFit's marks are distinctive, the court may consider several factors, including the degree of inherent or acquired distinctiveness of the mark, the duration and extent of use of the mark in connection with the goods or services with which the mark is used, and the duration and extent of advertising and publicity of the mark, among others. *See* 15 U.S.C. § 1125(c)(1).

According to Plaintiff's Complaint, "CrossFit, Inc. owns several registered United States trademarks and service marks comprised of the word 'CrossFit®,' including registered U.S. Service Mark Registration No. 3,007,458 issued on October 18, 2005, for use in connection with fitness training services ('CrossFit® Marks')." Compl., ¶ 9. Additionally, "CrossFit® Marks have been in continuous use in commerce since at least the dates of first use identified in their registrations to the present day." *Id.* Plaintiff

further alleges that its fitness training regimen "has become the principal strength and conditioning program for many police academies and tactical operations teams, military special operations units, champion martial artists, and hundreds of professional and amateur athletes worldwide." *Id.* at ¶ 8.  CrossFit licenses use of its intellectual property, including the CrossFit name, to affiliates that have received particularized training and certification from CrossFit.  *Id.* at ¶ 10.  CrossFit's careful cultivation, maintenance, and protection of its intellectual property rights have enabled CrossFit to amass considerable goodwill within its industry, and the CrossFit name is widely recognized around the world.  *Id.* at ¶ 8.  Consumers readily and singularly associate the CrossFit name with CrossFit's business and services.  *Id.*  CrossFit diligently protects its intellectual property through, *inter alia,* trademark and service mark registration.  *Id.* at ¶ 9.  The CrossFit Marks were distinctive and famous at the time Defendant Sainz registered the domain name.  *Id.* at ¶ 34.  Accordingly, CrossFit has alleged facts sufficient to show that the CrossFit Marks are famous and distinctive.  *See Crossfit, Inc. v. Jenkins*, 69 F. Supp. 3d 1088, 1098 (D. Colo. 2014); *S.E. La. Entm't, L.L.E. v. Hollywood Entm't Corp.*, 2000 WL 1251952, at *3 (E.D. La. Sept. 1, 2000) ("a famous mark is one which has been developed extensively enough to have significant marketing value to the owner and to cause a recognizable association to the public").

      2.    <u>Identical or Confusingly Similar</u>:

Defendants argue that the difference between their company's purpose and the purpose of Plaintiff's company removes their liability, and that the fact that they use the term 5280 "to support the proper business practices of a legitimate Colorado real estate business that does not compete in the same marketing channels as Plaintiff" defeats Plaintiff's claim that a potential for confusion between the names exists. Def.'s Motion, ECF No. 72, p. 12. A difference in company purposes can be a factor in determining whether the domain name in question is confusingly similar to the plaintiff's mark. *See Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) ("Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods."). However, the addition of a modifier to an established mark is not sufficient to defeat this element. *See Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1263 (D. Colo. 2009) (finding that adding the modifier of "my" to an established mark was confusingly similar to the mark); McCarthy on Trademarks § 25:78 ("The addition in the accused domain name of generic or descriptive matter to the mark will usually not prevent a finding of confusing similarity."); *DaimlerChrysler v. The Net, Inc.*, 388 F.3d 201 (6th Cir. 2004) (domain name of "foradodge.com" was confusing similar to the auto trademark of Dodge); *Coca-Cola Co, v. Purdy*, 382 F.3d 774 (8th Cir. 2004) (finding that a defendant who used domain names "drinkcoke.com", "mycoca-cola.com", "mymcdonalds.com", and "mypepsi.com" to divert users to anti-abortion websites was liable for cybersquatting). Here, the addition of 5280

is similar to the addition of a generic or descriptive modifier.  Although Defendants own the federal and Colorado trademarks for the term 5280, it is only for real estate related services.  *See* Pl.'s Response, ECF No. 80, p. 10.  As noted by Plaintiff, "[t]he '5280' term is a very descriptive and diluted one, used by many businesses in the Denver area." Pl.'s Response, ECF No. 80, p. 9.  Defendants argue that Plaintiff's claim differs from other ACPA cases because the domain name in dispute "contains trademarks of both parties."  Def.'s Motion, ECF No. 72, p. 6, n.1.  However, the addition of "5280" to "crossfit" does not change the overall impression that the information contained on the website is somehow affiliated with, or has originated from, or is sponsored by CrossFit. *See Marker Int'l v. DeBruler*, 635 F. Supp. 986, 999 (D. Utah 1986) (rejecting defendant's argument that the addition of another word to the plaintiff's name removes the confusing similarity.  "A defendant in a trademark infringement or unfair competition case cannot prevail by simply adding a word to the one it shares with the plaintiff.").  Additionally, Plaintiff alleges that Defendants purchase unrelated domain names and then forward those sites to their real estate site, with no intent to use the names for their own goods and services, noting that the domain names "do not reflect Defendants' legal name or a name that is commonly used to identify Defendants or Defendants' business."  Compl., ¶¶ 22-24.  Accordingly, Plaintiff has sufficiently alleged facts to support the element that Defendants' use of CrossFit in its domain names is confusingly similar to Plaintiff's Mark.

3.   Bad Faith Intent:

Plaintiff argues that it has pled facts sufficient to state a plausible claim that Defendants had a bad faith intent to profit from the CrossFit Mark. Those alleged facts include the following: Defendant Sainz had knowledge of the CrossFit Mark when he registered the first domain name, 5280crossfit.com (Pl.'s Response, p. 6); Sainz registered a second domain name, 5280crossfitgym.com, after being contacted by affiliate Jason Grubb (Compl., ¶ 18); Sainz offered both domain names at an exorbitant price after Grubb offered a no-cost transfer via email (*Id.* at ¶ 19-20); Sainz had no reasonable grounds to believe that the use of the domain names was fair use or otherwise lawful after Grubb informed him of the CrossFit Mark (*Id.* at ¶ 29); Sainz was "hoping that CrossFit, Inc. would make him a better offer than Mr. Grubb" (Pl.'s Response, p. 6); and Sainz "has a history of registering domain names incorporating others' trademarks." *Id.* at 7; see also Compl., ¶¶ 21, 22, 27, 28.

The ACPA lists nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(B)(i). "These factors are designed to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of others' marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, fair use, etc." H.R. Rep. No. 106–412, at 10 (1999) (Conf. Rep.). "The quintessential example of a bad faith intent to profit is when a defendant purchases a domain name very similar to the trademark and

- 9 -

then offers to sell the name to the trademark owner at an extortionate price." *Utah Lighthouse*, 527 F.3d at 1058.  On a motion for judgment on the pleadings, the Court must assess whether Plaintiff pleads sufficient factual allegations to state a claim. Therefore, although it is not appropriate to weigh all of the factors for potential evidence that could be presented at trial, it is appropriate to look at the facts of the present case to determine whether Plaintiff's allegations are sufficient in light of the bad faith factors. *See Cleary Bldg.*, 674 F. Supp. 2d at 1265.

Factor VI considers "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."  15 U.S.C. § 1125(d)(1)(B)(i)(VI).  This conduct is exactly what Plaintiff has alleged in its Complaint. The ACPA was created in part to protect consumers from those who trade on the names and reputations of established brands.  *See Clearly Bldg.*, 674 F. Supp. 2d at 1265. Viewing the facts in a light most favorable to Plaintiff and drawing all reasonable inferences in its favor, it is plausible that Defendants obtained the domain names in question with the intent of selling them to the highest bidder, and without an intent to use the domain names in any bona fide way related to their real estate business.

Factor VIII considers "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous

marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties." 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). Again, Plaintiff has sufficiently alleged this very behavior on the part of Defendants, claiming that Defendants have acquired specific domain names with the intention of selling those domain names to those whose marks are represented in them.

The ACPA states that bad faith intent cannot be found in any case where "the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Defendants argue that they did not know that CrossFit "was an actual corporation that owned a federal trademark for the term" and thought that CrossFit was "just a general term such as Yoga, Dance, Exercise, Gym, or Jog." Def.'s Motion to Dismiss, ECF No. 21, p. 3. However, Plaintiff has pled sufficient allegations in its Complaint that Defendants knew about the existence of the CrossFit corporation on January 15, 2015, when Plaintiff allegedly made an offer to perform a no-cost transfer of the domain name, to which Sainz allegedly responded with a significantly higher offer to sell the names. In the Senate Report accompanying the ACPA, cybersquatters are defined as those who register well-known brand names as domain names in order to extract payment from the rightful owners of the marks, and those who register well-known marks as domain names and warehouse those marks with the hope of selling them to the highest bidder. S. Rep. No. 106–140, at 5–6 (1999) (Conf. Rep.). Plaintiff has pled sufficient facts to support a claim of cybersquatting in this case.

III.	CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings as to Single Count of Cybersquatting (ECF No. 72) is **DENIED**.   It is

FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 21) is **DENIED as moot**.

Dated:   January 12, 2016.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE